UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )          No. 4:08 CR 610 JCH
                                   )                        DDN
DONALD JAMES ZAKRZEWSKI,           )
                                   )
            Defendant.             )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were assigned to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).

An evidentiary hearing was held on August 26 on the motions of defendant Donald James Zakrzewski to suppress statements (Doc. 38) and to suppress physical evidence (Doc. 39). After considering the evidence adduced during the hearing, the court makes the following findings of fact and conclusions of law:

**FACTS**

1. During 2007, St. Louis Metropolitan Police Detective Joseph Steiger began investigating Donald James Zakrzewski, after receiving information from other officers and confidential informants that Zakrzewski was involved in fencing stolen property. Det. Steiger had been told he was using a storefront location at 5400 South Kingshighway, in St. Louis, for his fencing operation. During his investigation, before October 2008, Det. Steiger learned that Zakrzewski had been convicted in state court of burglary and stealing, and in federal court of violating federal narcotics laws.

2. In October 2008, Det. Steiger received information from a confidential informant (CI)[1] that Zakrzewski was preparing to obtain a

_____

[1]This CI had previously provided information the officer considered reliable because that information led to a conviction in one case and to another case that was still pending in state court.

handgun for the purpose of reselling it. The same CI also told the officer that Zakrzewski used 5400 South Kingshighway for fencing property. The CI also told the officer that the gun sale transaction would begin when Zakrzewski left his residence at 4957 Wynona in the morning of October 9 to get the gun. The CI also told the officer that Zakrzewski knew that, if he got caught with the gun, with his record he would likely get a lengthy sentence of imprisonment, but that he figured he could get away with it because he would not have the gun in his possession long.

3.     In the morning of October 9, Det. Steiger and his partner, Det. Steve Schroeder, went to the 4900 block of Wynona to surreptitiously watch Zakrzewski's residence at 4957 Wynona. From a location 40 to 50 yards away, they saw Zakrzewski come out of that residence just before 10:00 a.m. and get into a gold Jeep Cherokee. The detectives had seen Zakrzewski use that vehicle previously on several occasions and had seen the Jeep parked in the lot near 5400 South Kingshighway.

4.     The officers followed the Jeep as it was driven directly to Sunshine, just west of Hampton Avenue. There, from a block away, the officers saw him meet with two people near a white construction van bearing a commercial sign, which the officers could not read. From the distance they had to drive past the subjects to avoid being recognized as police, the officers could not see what transpired at this meeting.

5.     Zakrzewski left the two people and drove to Robert, one block away, driving past the officers. The officers did not have to move their vehicle, because Zakrzewski parked about a half block away and met with a white man, the officer described as not wearing glasses, wearing no facial hair, and being of medium build. Again, the officers were unable to see what happened at this meeting.

6.     From the meeting on Robert, Zakrzewski drove indirectly[2] to 5400 Kingshighway. When he arrived, Dets. Steiger and Schroeder saw him get out of the Jeep, lean back into the vehicle, retrieve a dark-colored object, and put it under his shirt in his waistband. The officers could

_____

[2]The officers followed Zakrzewski as he drove a route that doubled back over streets and in directions that would not themselves lead to where he intended to go. Ultimately they followed him to his storefront at 5400 Kingshighway.

not see what the dark-colored object was.  They saw Zakrzewski place the object under an unbuttoned shirt and then look down in a manner that indicated he wanted to be sure the object was concealed.  Based on what they had seen that morning and knew from the CI, they believed the object was a gun.

7.    Steiger and Schroeder got out of their police vehicle and approached Zakrzewski.  Each officer wore a black vest with "POLICE" printed on it and wore his badge displayed on a chain around his neck.  After he got out of their vehicle, Det. Steiger called out to Zakrzewski, using his first name, "Donald."  Zakrzewski immediately put his hands in the air and spontaneously said, "I knew that motherfucker set me up."

8.    Then, because the officers believed Zakrzewski was armed, Det. Steiger did a pat-down search of him.  The officer felt a hard object, which felt like a handgun, at the same place he had seen Zakrzewski place an object when he got out of his car.  Steiger seized the object, a Mauser handgun,[3] and formally placed him under arrest for carrying a concealed weapon, being a felon in possession of a firearm, and possessing a defaced firearm.[4]  The officers also seized approximately $2,000 from his person.  At some time, backup officers came to the location.

9.    Next, Det. Steiger orally advised Zakrzewski of his constitutional rights to remain silent and to counsel.  Zakrzewski indicated that he understood his rights.  Without expressly or inferentially stating that he would not make a statement, Zakrzewski made no statement at that time.  Officers Rudolf and Bettingheimer then transported Zakrzewski to the south patrol police station.

10.    At the south patrol police station in the interview room, Det. Steiger again orally advised Zakrzewski of his constitutional rights to remain silent and to counsel.  In the interview that followed, Zakrzewski offered to give the officers information about his burglary and theft activities, if they would release him.  Zakrzewski referred a couple of

_____

[3]This is the pistol which is the subject of the instant indictment.

[4]No federal agent was involved in the detectives' investigation and arrest of Zakrzewski, and no federal arrest warrant was executed by his arrest.

times to the person he thought had "set him up" and said he was going to physically harm that person.  Det. Steiger, and occasionally Officers Rudolf and Bettingheimer, questioned Zakrzewski.  When Steiger told him that he would not be released, Zakrzewski stopped cooperating and said words to the effect "I am done.  I am going away.  Just fucking book me." At that time Det. Steiger stopped questioning Zakrzewski.  All these statements were made within six hours after his arrest.  Thereafter, Zakrzewski made no more statements.  Zakrzewski was in the interview room no longer than 30 minutes.  He was booked at the station between noon and 12:30 p.m.

11.  At no time on October 9, 2008, did Zakrzewski appear intoxicated or under the influence of drugs.  He did not appear to be suffering under any mental impairment. On October 9, 2008, Zakrzewski was approximately 40 years of age and had obtained a GED while in prison. Zakrzewski had prior experience with the criminal justice system, having been arrested, convicted, and imprisoned in the past, and had previously been made aware of his constitutional rights.  No promises, threats, or physical coercion was used to get him to cooperate with the police and to make statements. During the interview, Det. Steiger was not in uniform and did not display a firearm.  During the interview, Zakrzewski was allowed to smoke and, if he had asked, he would have been provided with something to drink.

12.  The indictment is the original charging document in this case and it was filed on October 23, 2008.  (Doc. 1.)  In this case, defendant first appeared before a Magistrate Judge on October 24, 2008.  (Doc. 3.)

## DISCUSSION

### Defendant's statements

Defendant Zakrzewski made statements to the police when they first approached him at 5400 Kingshighway (Finding 7), and at the south patrol police station (Finding 10).  In his motion to suppress his statements, defendant argues (1) that his statements were not voluntary because he made his statements without having been brought before a federal magistrate judge without unnecessary delay, (2) that he was not advised of his constitutional rights under the Fifth Amendment, (3) that his interrogation

did not end when defendant invoked his right, and (4) that his statements were the direct result of an unlawful warrantless arrest without probable cause.  Defendant argues that the physical evidence seized by the police should be suppressed, because (a) the seizure was without a warrant and other lawful justification, and (b) the seizure was without probable cause.

A statement to the police is not voluntary, "'if the totality of the circumstances shows the defendant's will was overborne,' and voluntary statements must not be the result of deception, intimidation, or coercion of the person giving the statement." United States v. Jimenez, 478 F.3d 929, 932-33 (8th Cir. 2007).  Defendant is a person with experience in the criminal system.  Before October 9, 2008, he was aware of his constitutional rights.  He had acquired some formal education.  And on October 9, 2008, he attempted to barter information for leniency, until he saw that leniency would not be offered.  At no time was defendant's will overborne and ability to not cooperate diminished.  All of his statements on October 9, 2008, were voluntary.

Defendant's argument that he was not advised of his constitutional rights fails as a matter of fact.  The statement described in Finding 7 was made by defendant spontaneously, without having been asked any question.  Rather, it was made in response to the officer's merely calling out defendant's first name.[5]  Defendant's statement was voluntary and such a statement is not subject to the advise of rights requirement of Miranda v. Arizona, 384 U.S. 436 (1966).  E.g. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam).  Before he made further statements, defendant was advised of his Miranda rights at the scene of the arrest and at the police station.  Defendant understood these rights and waived them by making statements as barter for leniency.

Defendant argues that the officers continued to question him after he invoked his right to remain silent.  When a defendant invokes his right to remain silent, that invocation must be "scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 104 (1975).  But to qualify as a sufficient invocation of such rights, the suspect must make "a clear, consistent

---

[5]The officer's approaching defendant on the street and stating his name, without more, did not implicate the Fourth Amendment.  United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005).

expression of a desire to remain silent." <u>United States v. Ferrer-Montoya</u>, 483 F.3d 565, 569 (8th Cir. 2007) (per curiam) (quoting <u>United States v. Thompson</u>, 866 F.2d 268, 272 (8th Cir. 1989)).  Defendant did not clearly invoke his right to remain silent.  Indeed, he began negotiating for leniency.

<u>Defendant's Physical Evidence</u>

Defendant argues that his warrantless arrest was unlawful.  The Eighth Circuit has held:

> To justify a warrantless arrest, probable cause must exist. Probable cause is determined from the totality of the circumstances as set forth in the information available to the arresting officers at the time of the arrest.  A warrantless arrest complies with the Fourth Amendment when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested.

<u>United States v. Houston</u>, 548 F.3d 1151, 1154 (8th Cir. 2008)(internal quotations and citations omitted).

In this case, the police had reliable information prior to the arrest that defendant, known to have been convicted of a felony crime, was preparing to obtain, and thus possess, a firearm in order to sell it to someone else.  The reliability of the informant included the specific information described in Finding 2.  This information was corroborated and expanded by the subsequent investigative information described in Findings 3, 4, 5, 6, and 7.  The totality of this information provided the police with probable cause to arrest defendant.

The warrantless seizure of the firearm and the $2,000 from defendant's person, as described in Finding 8, was lawful because the officers had probable cause to arrest him at that time.  <u>See</u> <u>United States v. Edwards</u>, 415 U.S. 800, 802-03 (1974); <u>see</u> <u>United States v. Scott</u>, 91 F.3d 1058, 1061 (8th Cir. 1996).

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motions of defendant Donald James Zakrzewski to suppress his statements (Doc. 38) and to suppress the physical evidence seized from him (Doc. 39) be denied.

The parties are advised they have until September 24, 2009, to file documentary objections to this Report and Recommendation. The failure to file timely documentary objections may result in the waiver of the right to appeal issues of fact.


 /S/ David D. Noce 
**UNITED STATES MAGISTRATE JUDGE**


Signed on September 10, 2009.